RECEIVED
IN LAKE CHARLES, LA

APR 2 5 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LARRY JOHNSON, ET AL. | : | DOCKET NO. 2:06 CV 1791 |
| VS. | : | JUDGE MINALDI |
| FEDERAL INSURANCE CO. | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 16] filed by Federal Insurance

Company ("Federal"). The plaintiffs, Larry and Dolores Johnson, have filed an opposition.

## BACKGROUND

On September 5, 2005, while in the course and scope of his employment with AECOM

Technology Corporation ("AECOM"), Larry Johnson's left hand was injured by a saw blade.[1] The

injury resulted in the amputation of his pinky finger at the second joint, complete amputation of his

ring and middle fingers, and reconstruction of his index finger.[2] At the time of the accident,

AECOM carried an Accident Insurance policy issued by Federal.[3] On or about October 10, 2005,

---

[1] Pet. ¶¶ 3, 6; Pls.'s Ex. 2 (Employee Statement).

[2] Pet. ¶ 6; Pls.'s Ex. 3 (Physician's Statement). There is a disputed issue of fact as to whether Johnson's index finger was severed and reattached or whether it was fractured and reconstructed. This distinction is relevant because a finger which is severed and reattached is considered, under the policy, to be a "complete severance" for the purpose of determining benefits.

[3] Def.'s Ex. A-1 (Policy).

1

AECOM filed a claim with Federal on behalf of Johnson.[4]  By letter dated December 9, 2005, Federal notified Johnson that his claim had been denied because he did not suffer complete severance of his left index finger and therefore his injury did not meet the policy's criteria for dismemberment.[5]  That letter also informed Johnson that he had 60 days within which to provide additional information and/or appeal the adverse decision.[6]  Federal alleges that no appeal was taken.

On September 5, 2006, the Johnsons filed suit in the 30th Judicial District Court, Parish of Vernon, State of Louisiana.  The Johnsons claimed damages as a result of the arbitrary and capricious denial of coverage.  The action was removed to federal court and now comes before the court on the instant motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57 (1986).  When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a

---

[4] Def.'s Ex. A at ¶ 4 (Herron Aff.).

[5] Def.'s Ex. A-2; Pls.'s Ex. 4.

[6] This part of the letter is unclear and will be discussed in more detail *infra*.

genuine issue of material fact.[7] *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman,* 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. *See Celotex,* 477 U.S. at 328, 106 S.Ct. at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. FED.R.CIV.P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services,* 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077 (1992); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. FED.R.CIV.P. 56(e); *see also Topalian,* 954 F.2d at 1131.

## ANALYSIS

Federal argues that: (1) the plaintiffs' state law claims are preempted by the Employee Retirement Security Act ("ERISA" or "the Act"), 29 U.S.C. § 1001, *et seq.,* and (2) they cannot pursue an ERISA claim because Johnson failed to exhaust his administrative remedies.

### *ERISA Preemption*

ERISA defines an "employee welfare benefit plan" as:

---

[7] A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id* .; *see also Judwin Properties, Inc. v. United States Fire Ins. Co.,* 973 F.2d 432, 435 (5th Cir.1992).

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise...benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1). The Act's "general preemption clause" provides that ERISA shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).[8] "A state law 'relates to' an employee benefit plan 'if it has a connection with or reference to such a plan.'" *Rozzell v. Security Servs., Inc.*, 38 F.3d 819, 821 (5th Cir. 1994) (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2900 (1983)).

Thus, ERISA preempts a state law claim "if (1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship between the traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Smith v. Tex. Children's Hosp.*, 84 F.3d 152, 155 (5th Cir. 1996) (quoting *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir. 1995)).

The Supreme Court has broadly construed ERISA's preemption provisions. In *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 124 S.Ct. 2488, 2495 (2004), the Court explained that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." While expansive, ERISA preemption is not without limits. *See Smith*, 84 F.3d at 155

---

[8] The general preemption clause is qualified by a "savings clause," which is in turn qualified by a "deemer clause." *See Gonzales v. Prudential Ins. Co. of America*, 901 F.2d 446, 451 (5th Cir. 1990). However, neither of these qualifying clauses are applicable to the instant case.

(citing *Rozzell*, 38 F.3d at 822); *see also Sommers Drug Stores Co. v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1465 (5th Cir. 1986) (noting that the Supreme Court has indicated that it will not extend the "relate to" language to its outer limit). "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21; *see Sommers Drug*, 793 F.2d at 1465-68 (discussing cases where courts have found the state actions too tenuous).

Following the two-prong preemption analysis above, it is clear that the Johnsons' state law claim is preempted by ERISA. First, under the definition in 29 U.S.C. § 1002, the AECOM Accident Insurance plan is an employee welfare benefit plan. Second, the Johnsons' claim concerns the right to receive benefits under this plan. Finally, the claim affects the relationship between traditional ERISA entities– Johnson and Federal.

Although preempted by ERSIA, it is not imperative that the Johnsons' claim be dismissed. *See Arthurs v. Metropolitan Life Ins. Co.*, 760 F.Supp. 1095, 1098 (S.D.N.Y. 1991) ("While the preemption analysis is correct, the appropriate remedy is not to dismiss the claim but rather to treat it as a claim made under ERISA."). It is well established that the federal rules allow for liberal pleading and a plaintiff does not forfeit relief by mischaracterizing the theory of the claim. *See, e.g.* FED.R.CIV.P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). Accordingly, the Johnsons' petition will be treated as a claim made under ERISA's civil enforcement provision. 29 U.S.C. § 1132(a)(1)(B) (providing that civil action may be brought by a beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan).

5

*Exhaustion of Administrative Remedies*

"ERISA contains no exhaustion requirement whatsoever. However, relying upon *Amato v. Bernard,* 618 F.2d 559 (9th Cir.1980), plus Congressional intent and well-settled principles of administrative law, we adopted the common law rule that a plaintiff generally must exhaust administrative remedies afforded by an ERISA plan before suing to obtain benefits wrongfully denied." *Chailland v. Brown & Root, Inc.,* 45 F.3d 947, 950 (5th Cir. 1995) (footnotes omitted) (citing *Denton v. First National Bank,* 765 F.2d 1295, 1300-03 (5th Cir. 1985)). The purpose of the exhaustion requirement is three-fold: "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo.*" *Denton,* F.2d at 1300.

It appears that Federal, as required by ERISA, provided Johnson with a legally adequate Summary Plan Description (SPD). *See* 29 U.S.C. §§ 1021-22, 1024; *see also Hicks v. Fleming Companies, Inc.* 961 F.2d 537 (5th Cir. 1992). The SPD contained an explanation of "the remedies available under the plan for the redress of claims which are denied in whole or in part." 29 U.S.C. § 1022(b).[9] According to that explanation, a claimant has 60 days from the receipt of notification of denial to appeal an adverse determination.[10] As part of the appeal, the claimant may submit additional information and is entitled to received from Federal information relevant to the denial.[11]

---

[9] *See* Def.'s Ex. A-3 at 126.

[10] *Id.*

[11] *Id.*

Within 60 days of the claimant's notice of appeal, the plan administrator is required to notify the claimant of the decision on appeal.[12]

It is undisputed that Johnson received the December 9, 2005 notification of denial (which also explained the 60-day period for appeals). It is also undisputed that Johnson never lodged a formal appeal. However, there remain several unresolved issues of fact.

First, the plaintiffs assert that Johnson's claim was either reopened or on appeal despite taking no formal, post-determination action to that effect. The plaintiffs allege that Johnson's wife, Delores Johnson, contacted Federal claims adjuster Stacy Wells after they received notice of denial.[13] Indeed, on January 11, 2006, Wells contacted Johnson's hand surgeon, Dr. John McCabe, to ascertain whether Johnson's left finger had been completely severed.[14]

On February 9, 2006 Wells sent a letter to Johnson informing him that Dr. McCabe had not responded to her inquiry and that his response was necessary "to complete our investigation of this claim in order to determine if your injury meets the policy criteria for Loss of Use of One Hand."[15] On March 16, 2006, Dr. McCabe responded to Wells's letter and attempted to clarify the injury to Johnson's index finger.[16] Apparently dissatisfied with Dr. McCabe's response, on March 17, 2006, Wells sent a second letter to Dr. McCabe inquiring as to whether Johnson suffered a complete

---

[12] *Id.*

[13] Johnson Aff. ¶ 5.

[14] Pls.'s Ex. 5.

[15] Pls.'s Ex. 6.

[16] Pls.'s Ex. 7.

severance of his left index finger.[17] Dr. McCabe allegedly did not respond to this second request.[18]

Thus, while there is no evidence of a formal appeal or reopening, the ongoing correspondence between Johnson, Wells, and Dr. McCabe is, at the very least, indicative of a *de facto* reopening of Johnson's claim. Moreover, the fact that Federal continued to investigate Johnson's injury some three months after the December 9, 2005 notification of denial suggests that the notification was not dispositive of his claim. Certainly, the post-determination correspondence and investigation creates an issue of material fact as to whether Johnson exhausted his administrative remedies.

Second, the December 9, 2005 notification letter's explanation of Federal's procedure for appeals is ambiguous. The notification letter includes two paragraphs regarding post-determination review. The first explains that Federal is "willing to review any additional information you may have that was not previously provided that you believe may impact our decision." The claimant is advised to provide this material within 60 days. The second paragraph states that the claimant has the right to file a notice of appeal within 60 days.

It is difficult to reconcile these two paragraphs. Does providing additional information within 60 days initiate the appeals process? Did Delores Johnson's phone call constitute the provision of additional information? In short, the parties mutual failure to strictly comply with Federal's administrative procedure creates a genuine issue of material fact as to whether Johnson exhausted his administrative remedies.

## CONCLUSION

Accordingly Federal's Motion for Summary Judgment [doc. 16] will be denied. The

---

[17] Pls.'s Ex. 8

[18] *See* Johnson Aff. ¶ 12.

8

plaintiffs' state law claim will henceforth be considered a claim made under ERISA's civil enforcement provision.

Lake Charles, Louisiana, this _**26**_ day of April, 2007.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

9